## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELISSA LOUISE WALCK,<br><br>    Plaintiff<br><br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant | CIVIL ACTION NO. 3:15-CV-00687<br><br>(MEHALCHICK, M.J.) |

### MEMORANDUM OPINION

This is an action brought under Section 205(g) of the Social Security Act, 42 U.S.C. §405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Melissa Louise Walck's ("Ms. Walck") claim for disability insurance benefits under Title II of the Social Security Act. This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. For the reasons expressed herein, it is recommended that the Commissioner's decision be **AFFIRMED**, and Ms. Walck's request for remand be **DENIED**.

**I. PROCEDURAL HISTORY**

On November 15, 2011, Ms. Walck filed a Title II application for disability insurance benefits alleging disability beginning April 25, 2011, when she was thirty-nine years old. She alleged that the following conditions made it impossible for her to return to her past relevant work as a customer service representative, order clerk, assembler of electrical parts, or warehouse worker: GI issues, major depression, and anxiety. (Doc. 11-6, p. 5; Admin. Tr. 182). The ALJ found that, in addition to the conditions alleged, Ms. Walck suffered from lumbago,

osteoarthritis of the left knee, deep phlebitis, on long-term anticoagulation medication, obesity, bipolar disorder, and alcohol abuse, in partial remission.

Ms. Walck reported that her conditions affect her ability to bend, stand, walk, sit, kneel, climb stairs, remember, complete tasks, concentrate, understand, use her hands, and get along with others. (Doc. 11-6, p. 28; Admin. Tr. 205). Ms. Walck testified that she could sit up to fifteen minutes at one time, stand up to twenty minutes at one time, walk up to one block at a time, and lift up to five pounds. (Doc. 11-2, pp. 52-53; Admin. Tr. 51-52). Ms. Walck uses a cane to walk short distances and a walker to walk long distances. (Doc. 11-2, pp. 51; Admin. Tr. 50). She wears medical stockings to help with circulation. (Doc. 11-2, p. 50; Admin. Tr. 49). She testified that she cannot bend or stoop secondary to pain. (Doc. 11-2, p. 59; Admin. Tr. 58). Ms. Walck reported that she tends to forget things a lot, has difficulty maintaining attention, and cannot follow the plot of television shows or books. (Doc. 11-2, pp. 53-54; Admin. Tr. 52-53).

In connection with the initial administrative review of her claims, the records available prior to July 3, 2012, were reviewed by State agency psychologist John Gavazzi ("Dr. Gavazzi"). Dr. Gavazzi completed a Psychiatric Review Technique ("PRT") assessment and mental residual functional capacity ("RFC") assessment. (Doc. 11-3, pp. 5, 8-10; Admin. Tr. 71, 74-76). In his PRT assessment, Dr. Gavazzi assessed that the record was sufficient to establish the presence of a medically determinable affective disorder (i.e., Bipolar Disorder), and that Ms. Walck's impairment resulted in a mild restriction of activities of daily living, moderate difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence, or pace, and no episodes of decompensation. (Doc. 11-3, p. 5;

Admin. Tr. 71). In his RFC assessment Dr. Gavazzi opined that Ms. Walck could: understand, retain, and follow simple job instructions (i.e., perform one-and two-step tasks) and perform simple, routine, repetitive work in a stable environment; make simple decisions, maintain regular attendance and be punctual; carry out very short and simple instructions; and maintain socially appropriate behavior and maintain acceptable personal hygiene. (Doc. 11-3, pp. 8-10; Admin. Tr. 74-76).

Ms. Walck's physical impairments were assessed by a non-medical single decision maker, who concluded that Ms. Walck was capable of engaging in a range of unskilled sedentary work. (Doc. 11-3, p. 11; Admin. Tr. 77). Specifically, the single decision-maker assessed that Ms. Walck could: occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk (with normal breaks) for a total of six hours per eight-hour workday; stand and/or walk (with normal breaks) for a total of six hours per eight-hour workday; push and pull without limitation other than what is shown for lift and/or carry; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and climb stairs; and, never climb ladders, ropes, or scaffolds. The single decision maker also assessed that Ms. Walck's ability to engage in basic work activities was not subject to any environmental limitation.

Ms. Walck's claim was denied at the initial level of administrative review on July 31, 2012. She requested and was granted an opportunity to present additional evidence in support of her claim during an administrative hearing. Before this hearing took place, however, Ms. Walck's application was informally remanded for pre-hearing case review, where the evidence

of record was evaluated by State agency medical consultant Karen Schnute ("Dr. Schnute"), who specializes in internal medicine. [1] Dr. Schnute noted that the limitations assessed by the single decision maker were consistent with "light" rather than "sedentary" work, and opined that a review of the medical records available as of October 19, 2012, supported a "sedentary" RFC. (Doc. 11-13 p. 30; Admin. Tr. 513). A second State agency psychologist, Alvin Smith ("Dr. Smith") also evaluated Ms. Walck's claims during informal remand, and agreed with the RFC assessed by Dr. Gavazzi. *Id.*

On June 26, 2013, Dr. Rehab Tabchi ("Dr. Tabchi") completed a physical capacity evaluation and pain questionnaire. (Doc. 11-15, pp. 47-51; Admin. Tr. 614-18). In his physical capacity evaluation Dr. Tabchi assessed that Ms. Walck could: sit up to three hours per eight-hour work day, stand up to one hour per eight-hour work day, and walk up to one hour per eight-hour workday provided she be permitted to alternate positions every fifteen minutes; not use her left foot for repetitive movements (i.e., operating foot controls); frequently lift or carry up to five pounds; occasionally lift or carry up to twenty pounds; occasionally bend, climb, and reach above shoulder; and never squat or crawl. *Id.* Dr. Tabchi also assessed that Ms. Walck is moderately restricted from exposure to marked changes in temperature and humidity, gas, fumes, and gases, and is totally restricted from being around unprotected heights, moving

---

[1] After a hearing is requested but before it is held, a case may be remanded for informal pre-hearing review. 20 C.F.R. § 404.941. A pre-hearing review may be conducted if: additional evidence is submitted; there is an indication that additional evidence is available; there is a change in the law or regulation; or there is an error in the file or some other indication that the prior determination may be revised. *Id.*

machinery, and cannot drive automotive equipment. *Id.* In his pain questionnaire, Dr. Tabchi noted that Ms. Walck suffered from severe pain that interfered with her ability to sleep, engage in activities of daily living, and concentrate on job tasks. *Id.*

On June 12, 2013, Dr. Myron Haas ("Dr. Haas") completed a pain questionnaire on Ms. Walck's behalf. (Doc. 11-16, pp. 13-14; Admin. Tr. 642-43). Like Dr. Tabchi, Dr. Haas assessed that Ms. Walck suffered from severe pain that interfered with her ability to sleep, engage in activities of daily living, and concentrate on job tasks. *Id.* On June 21, 2013, in his treatment notes, Dr. Haas noted that "[a]t this point I believe [Ms. Walck] cannot work . . . ." (Doc. 11-15, p. 43; Admin. Tr. 610).

The record also contains multiple impairment questionnaires completed by Therapist Missy McDonald ("Therapist McDonald"). (Doc. 11-16, pp. 20-33; Admin. Tr. 649-62). She submitted impairment questionnaires about depression dated June 2013, and July 2013. (Doc. 11-16, pp. 20-22, 27-29; Admin. Tr. 649-51, 656-58). In both depression questionnaires Therapist McDonald noted that Ms. Walck's depressive syndrome was accompanied by the following symptoms: anhedonia or pervasive loss of interest in almost all activities; appetite disturbances with a change in weight; sleep disturbance; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; and difficulty concentrating or thinking. In her June 2013 depression questionnaire, Therapist McDonald noted that as a result of her mental disorder Ms. Walck had the following functional limitations: moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; and marked difficulties in maintaining concentration, persistence, or pace. In her July 2013 depression questionnaire Therapist McDonald noted the same functional limitations except that she found

"marked" rather than moderate restriction of activities of daily living, and assessed that Ms. Walck experienced three episodes of decompensation.

Therapist McDonald completed anxiety questionnaires dated June 2013, and July 2013. (Doc. 11-16, pp. 23-25, 30-32; Admin. Tr. 652-54, 659-61). In the anxiety questionnaires Therapist McDonald noted that Ms. Walck exhibited generalized persistent anxiety accompanied by: motor tension; apprehensive expectation; vigilance and scanning; a persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; recurrent severe panic attacks occurring on average at least once per week; recurrent obsessions or compulsions; and recurrent and intrusive recollections of a traumatic experience. In both questionnaires Therapist McDonald assessed that Ms. Walck's impairments resulted in: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; and marked difficulties maintaining concentration, persistence or pace. In the July 2013 questionnaire Therapist McDonald also assessed that Ms. Walck also experienced three episodes of decompensation of extended duration.

Therapist McDonald completed two assessments relating to Ms. Walck's ability to engage in basic work-related mental activities dated June 2013 and July 2013. (Doc. 11-16, pp. 26, 33; Admin. Tr. 655, 662). Therapist McDonald assessed that Ms. Walck would be able to: understand simple instructions; carry out simple instructions; remember simple instructions; and respond appropriately to supervision on a sustained basis in July 2013, but not in June 2013. Therapist McDonald assessed that Ms. Walck could not: respond appropriately to co-

workers on a sustained basis; respond to usual work situations on a sustained basis; and deal with changes in a routine work setting on a sustained basis.

An administrative hearing was convened on July 16, 2013, by video. With the assistance of counsel, Ms. Walck appeared and testified before ALJ Lawrence J. Neary ("ALJ"). Impartial vocational expert Carmine Abraham ("VE Abraham") also appeared and testified during the administrative hearing.

The ALJ denied Ms. Walck's claim in a written decision dated August 9, 2013. Ms. Walck sought review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review. Her request was denied on February 4, 2015. The Appeals Council's denial of review makes the ALJ's August 2013 decision the final decision of the Commissioner subject to judicial review by this court.

On April 8, 2015, Ms. Walck appealed the Commissioner's final decision by filing a complaint. (Doc. 1). In her complaint, Ms. Walck seeks judgment for such relief as may be proper. On June 16, 2016, the Commissioner filed her answer. (Doc. 10). In her answer, the Commissioner contends that the decision holding that Ms. Walck is not entitled to benefits is correct and in accordance with the law and regulations, and that the ALJ's findings of fact are supported by substantial evidence. *Id.* Together with her answer, the Commissioner filed a certified transcript of the entire record of proceedings related to this case. (Doc. 11).

This matter has been fully briefed by the parties and is ripe for decision. (Doc. 12; Doc. 13; Doc. 14).

## II. STANDARD OF REVIEW

To receive benefits under Title II of the Social Security Act, the claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To satisfy this requirement, the claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant number in the national economy. 42 U.S.C. § 423(d)(2)(A). The claimant must also meet the insured status requirement to receive disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating the question of whether a claimant is under a disability as it is defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether the claimant is able to do his past relevant work, considering his current residual functional capacity ("RFC");[2] and, (5) whether the claimant is able to do any other work that

---

[2] A claimant's RFC is the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1); *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). Before the ALJ goes from step three to step four, he or she assesses the claimant's RFC. 20 C.F.R. § 404.1520(a)(4). The RFC is used at step four and step five to evaluate the claimant's case.

exists in significant numbers in the national economy, considering his current RFC, age, education, and work experience. *Id.* The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him from doing his past relevant work. 20 C.F.R. § 404.1512(a). Once the claimant has established at step four that he cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f).

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200(3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536(M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the

court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Ms. Walck is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); *Burton v. Schweiker*, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); *Ficca*, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

### III. THE ALJ'S DECISION

In his August 2013 decision, the ALJ found that Ms. Walck meets the insured status requirements of the Social Security Act through December 31, 2016. (Doc. 11-2, p. 23; Admin. Tr. 22). At step one of the sequential evaluation process the ALJ found that Ms. Walck had not engaged in substantial gainful activity between April 25, 2011, and August 9, 2013. *Id.* At step two the ALJ found that Ms. Walck had the following medically determinable severe impairments: lumbago; osteoarthritis, knee; diverticulitis; deep phlebitis, on long-term anticoagulation medication; obesity; depressive disorder; bipolar disorder; anxiety; and alcohol abuse, in partial remission. (Doc. 11-2, pp. 23-24; Admin. Tr. 22-23). At step three the ALJ found that Ms. Walck did not have an impairment or combination of impairments that met or

medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 11-2, pp. 24-27; Admin. Tr. 23-26).

Between steps three and four the ALJ assessed Ms. Walck's RFC. The ALJ found that Ms. Walck could perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except:

> the claimant is limited to occasional performance of postural maneuvers, but must never climb ladders, ropes, or scaffolds. In addition, the claimant is limited to simple, routine, repetitive tasks, with only occasional changes in the work setting and is limited to occasional interaction with the public and supervisors.

(Doc. 11-2, p. 27; Admin. Tr. 26).

The ALJ's findings at steps four and five were based upon the above RFC assessment, and informed by the testimony of VE Abraham. VE Abraham testified that an individual with the above RFC could not engage in any of Ms. Walck's past relevant work. Relying on this testimony, the ALJ found in Ms. Walck's favor at step four when he concluded that she could not engage in any of her past relevant work. (Doc. 11-2, pp. 31-32; Admin. Tr. 30-31). VE Abraham also testified, however, that an individual with the same RFC and vocational characteristics (i.e., age, education, work experience) could adjust to other work as a visual inspector (DOT #726.684-050), bench assembler (DOT #715.684-026), and surveillance system monitor (DOT #379.367-010). VE Abraham also testified that there are approximately: 550,340 visual inspector positions in the national economy; 605,650 bench assembler positions in the national economy; and 485,440 surveillance system monitor positions in the national economy. (Doc. 11-2, p. 66; Admin. Tr. 65). Relying on this testimony, the ALJ found that Ms. Walck could adjust to "other work" that exists in significant numbers in the national economy despite her impairments. (Doc. 11-2, p. 32; Admin. Tr. 31). As such the ALJ concluded that Ms. Walck did not meet the definition of "disabled" under the Social Security Act.


**IV.    ANALYSIS**

As discussed above, between steps three and four of the sequential evaluation process, the ALJ must evaluate a claimant's RFC. The Commissioner's regulations provide that a claimant's RFC is assessed "based on all of the relevant medical and other evidence," including the credible medical opinions of record. 20 C.F.R. § 404.1545. This assessment is then used at steps four and five of the sequential evaluation process. 20 C.F.R. § 404.1520(a). Ms. Walck alleges that the ALJ's decision at step five of the sequential evaluation process is not supported by substantial evidence because the ALJ improperly discounted the medical opinions of treating sources Dr. Tabchi and Dr. Haas, and therefore his RFC assessment is not based on all of the relevant medical evidence.

In deciding what weight to accord to competing medical opinions the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions are generally entitled to more weight. *See* 20 C.F.R. § 404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. § 404.1502(defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c). Furthermore, 20 C.F.R. § 404.1527(c)(2) requires that the Commissioner "will always give good reasons in [his] notice of determination or decision for the weight [he] gives to [a claimant's] treating source's opinion." Where, "the opinion of a treating physician conflicts with that of a non-treating, nonexamining physician, the ALJ may choose whom to credit, but cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)(internal quotations omitted).

In his decision, the ALJ accorded "little" weight to Dr. Tabchi's physical capacity assessment. The ALJ explained that:

> While this opinion was rendered by a treating source, it is not consistent with the record as a whole or with the claimant's reported activities. Specifically, the record fails to support the level of restrictions given by Dr. Tabchi in the claimant's ability to use her left foot, to perform postural maneuvers, and to tolerate exposure to environmental factors. Moreover, Dr. Tabchi's opinion that the claimant has total restriction with regard to operating automotive equipment is contrary to the claimant's reports that she maintains her driver's license and drives 10 times per week (Exhibits 4E, 19F, and Testimony).

(Doc. 11-2, p. 29; Admin. Tr. 28). He accorded "partial" weight to Dr. Haas's pain questionnaire, and explained that:

> Unfortunately, this opinion does not provide a function-by-function analysis of the claimant's abilities or limitations (Exhibit 22F). Therefore, as this opinion does provide insight into the claimant's symptoms, it does not provide any specific insight into how those symptoms affect the claimant's abilities. As a result, this opinion has been given only partial weight.

*Id.* Last, The ALJ accorded "great" weight to the opinion of Dr. Schnute that Ms. Walck was "limited to sedentary work." (Doc. 11-2, p. 30; Admin. Tr. 29). He explained that:

> While this opinion was rendered by a non-examining physician and does not provide a function-by-function analysis of the claimant's abilities or limitations, it is consistent with the record as a whole, with the claimant's treatment history, and with the claimant's reported activities.

*Id.*

Ms. Walck alleges that the ALJ's assessment of the medical opinion evidence is undermined by several flaws. First, she argues that the ALJ failed to discuss two of the factors outlined in 20 C.F.R. § 404.1527(c) before discounting the medical opinions of Dr. Tabchi and Dr. Haas. (Doc. 12, p. 11). Second, she argues that the ALJ failed to explain his rationale for according "great" weight to Dr. Schnute's opinion despite the fact that the opinion predates the treating source opinions. (Doc. 12, p. 10). Last, Ms. Walck argues that, contrary to the ALJ's assessment, the opinions of Dr. Tabchi and Dr. Haas are supported by the record. (Doc. 12, p. 7).

With respect to her first argument, Ms. Walck fails to cite any authority mandating that the ALJ must enumerate or discuss each factor listed in 20 C.F.R. § 404.1527(c). The regulation itself requires that an ALJ *consider* and *apply* each factor, and that an ALJ must always give "good reasons" for the weight given to a treating source opinion. 20 C.F.R. § 404.1527(c). Case law provides that the ALJ is not required to "use particular language or adhere to a particular format," *Jones v. Barnhart,* 364 F.3d 501, 505 (3d Cir. 2004), and instead is required to provide

enough explanation of his findings to permit meaningful judicial review. *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981). Ms. Walck is correct that Dr. Haas is a specialist, that Dr. Tabchi has had an examining relationship with Ms. Walck for a significant period of time, and that under the regulations both of these factors favor Dr. Hass's and Dr. Tabchi's opinions. However, the Court finds that her allegation that remand is warranted because the ALJ failed to discuss one of several factors that the ALJ was required to consider in relation to each doctor is unpersuasive in this case. The Court's review of the ALJ's decision reveals that the ALJ provided ample discussion of the factors that led him to accord "little" weight to Dr. Tabchi's opinion, and "partial" weight to Dr. Haas's opinion. As such, the Court finds that this argument lacks merit.[3]

With respect to Ms. Walck's second argument, that the ALJ improperly credited a nonexamining source opinion that predates two treating source opinions, the Court finds that it lacks merit. As noted in *Chandler v. Comm'r of Soc. Sec.*, "[t]he Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." 667 F.3d 356, 361 (3d Cir. 2011). In *Chandler*, the claimant argued that an error occurred

---

[3] Ms. Walck also objects to the ALJ's decision to accord "partial" weight to Dr. Haas's pain questionnaire simply because it does not include a function-by-function assessment. The Court finds that this argument lacks merit. Dr. Haas's questionnaire is composed of a series of "yes or no" questions and does not address any particular functional limitation. The ALJ credited it to the extent that it supports a finding that Ms. Walck was in some degree of pain, but could not incorporate it fully into his RFC assessment because it does not address the extent to which Ms. Walck's pain limits her ability to engage in work-related activities. The Court fails to see how the ALJ could have addressed this opinion in a meaningful fashion given that it does not speak to the limiting effects of Ms. Walck's pain.

when the ALJ reviewed intervening developments in the record and extrapolated an RFC from a one-year-old nonexamining medical opinion based on the ALJ's own lay evaluation of the evidence. *Id.* at 362. Similarly, Ms. Walck suggests that Dr. Schnute's opinion cannot be relied upon because it is outdated.[4] As in *Chandler*, the ALJ in this case did not simply "rubber stamp" Dr. Schnute's assessment. In addition to limiting Ms. Walck to sedentary work, the ALJ limited the frequency with which she could perform certain postural maneuvers. Moreover, Dr. Schnute had an opportunity to review evidence related to all of Ms. Walck's impairments save one – her back impairment. Ms. Walck relies heavily on two MRIs and electrodiagnostic testing dated after Dr. Schnute issued her opinion to support her argument.[5] However, Ms. Walck's

---

[4] Ms. Walck also criticizes the ALJ's reliance on Dr. Schnute's opinion because it does not include a function-by-function assessment. The Court finds that this argument lacks merit. Dr. Schnute is a State agency consultant. The Commissioner's policy guidance provides that "State agency medical and psychological consultants are highly qualified physicians and psychologists *who are experts in the evaluation of the medical issues in disability claims under the act*." SSR 96-6p, 1996 WL 374180 at *2 (*emphasis added*). Experts like Dr. Schnute routinely assess claimant's RFC at the initial level of the administrative review process. *Id.* Therefore the ALJ may reasonably infer that Dr. Schnute's statement that Ms. Walck is capable of engaging in "sedentary" work is consistent with the Social Security Administration's definition of the same. *See* 20 C.F.R. § 404.1567(a)(defining sedentary work); SSR 83-10, 1983 WL 31251 at *5(discussing the standing, walking, and sitting required of sedentary work).

[5] Ms. Walck also notes that she suffered from a torn meniscus in her left knee in June 2013. During her administrative hearing Ms. Walck reported that her orthopedist (Dr. Haas) had referred her to a specialist to assess the potential complications associated with the surgical repair of Ms. Walck's left meniscus due to her history of blood clots. (Doc. 11-2, p. 48; Admin. Tr. 47). Thus, as of July 16, 2013, there was no recommended course of treatment or prognosis, and no assessment of the duration, or permanence of any limitation associated with this injury. Ms. Walck did not allege that this impairment prevented her from working and the ALJ did not expressly address it in his decision. Ms. Walck did not raise any step two issue on appeal, and the Court does not address it here.

treating neurologist noted that the findings from the MRIs of Ms. Walck's cervical and lumbar spine were "relatively minimal," (Doc. 11-15, p. 41; Admin. Tr. 608), and that the electrodiagnostic study of Ms. Walck's lower extremities demonstrated only *mild* bilateral sensorimotor polyneuropathy and *possible* right S1 radiculopathy. (Doc. 11-15, p. 31, 36; Admin. Tr. 598, 603). Accordingly, the Court finds that the ALJ's assessment that Dr. Schnute's opinion is consistent with the record—including medical evidence submitted after Dr. Schnute issued her opinion – is reasonable and supported by substantial evidence.

With respect to Ms. Walck's third argument, that the ALJ incorrectly found that the opinion of Dr. Tabchi was not supported by the record, the Court finds that it lacks merit. Ms. Walck argues that the ALJ's rationale for discounting Dr. Tabchi's assessment that Ms. Walck cannot drive, should never crawl or squat, and should not be exposed to certain environmental conditions does not withstand close examination of the record. In support of this argument, she relies primarily on *Morales v. Apfel,* where the Third Circuit held that an ALJ may not rely on speculative inferences from medical reports to discount a treating source opinion. 225 F.3d at 317. However, *Morales* prohibits an ALJ from relying on *speculative* inferences. The "substantial evidence standard is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Furthermore, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'"

*Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)(*quoting Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Unlike in *Morales*, the ALJ's assessment of the medical opinion evidence in this case is not based on the ALJ's impression of Ms. Walck's physical health during the administrative hearing, and is instead based on reasonable inferences drawn directly from the objective evidence of record. Because the ALJ's assessment is grounded in the medical evidence of record, the Court finds no basis to disturb the ALJ's decision.

## V.   CONCLUSION

Based on the foregoing, the Commissioner's decision shall be **AFFIRMED**, and Ms. Walck's request for relief shall be **DENIED**.

Dated: August 15, 2016                                                       *s/ Karoline Mehalchick*
                                                                            **KAROLINE MEHALCHICK**
                                                                            **United States Magistrate Judge**